May it please the court, my name is Michael Conger. I'm here with Richard Venice and we represent the plaintiff and appellant Allison Terry. I want to briefly describe the underlying case and then I'll talk about the three points that I want to raise. This is a proven gender discrimination case involving the City of San Diego's lifeguard service. Ms. Terry had worked as a seasonal summer lifeguard for 16 years and suffered discrimination which prevented her from being hired to a full-time lifeguard position. In a prior appeal, this court reversed summary judgment favoring the City. At trial, Ms. Terry proved that, quote, the City had an employment or promotional process that disparately impacted women, women applying for the lifeguard 2 position, end quote. She prevailed on disparate impact and disparate treatment theories under both state and federal law. I'd like to address three points. One, the importance of this appeal to access to justice for victims of discrimination. Two, why the City's letter brief, which at the direction of the District Court was not served on Terry, appears to have affected the fee order. And three, briefly, I'd like to address the recent case of Carter v. Caleb Brett, which was filed after briefing and on which we filed a Rule 28J letter. Access to justice. The City argues that, quote, this appeal involves solely an award of attorney fees, end quote. My client contends to the contrary, that this case is about helping to end gender discrimination in the City's lifeguard service and the availability of reasonable attorney's fees under standards set by the court. By this court, in a case that Judge Smith wrote in Gonzales. It's only judge. Judge. No justice in the ninth circuit. That the availability of reasonable attorney's fees to successful plaintiffs who prove discrimination is essential. It's not just conducive. It's essential to help end discrimination for two reasons. Well, I hope you'll get to the did they abuse their discretion in applying the Lodestar terminology, rather than talk to me about what I think are great values that you're talking about. But you've got to tell me this is an abuse discretion case, correct? Yes, sir, and there's three ways. So we've got to talk about where did the district court abuse its discretion in allowing attorney's fees or not? That's what we're talking about. Yes, sir. Three exact places. And remember, the standard is if this court determines de novo whether the trial court identified the correct legal principle, and if the trial court failed to do so, this court must conclude that the lower court abused its discretion. Here's the three places. One, at the very outset of the analysis, the district court said he was acting, quote, as the guardian of the city's purse strings, end quote. Well, let's not lay too much there. Second. The best you can say is that he's trying to do more than he ought to. But I'm from Idaho, and a lot of kids on the bench in Idaho say things they ought not to say. And I think this read in context just seems to be another way of saying I've got to determine what a reasonable fee is. So let's go right at the reasonable fee. Well, okay. But where there was an abuse of discretion is also saying that it doesn't advance the public interest when you prove discrimination. It goes against all the press and Supreme Court cases. And third, Your Honor, and this is coming right out of Gonzales that was written last September, you said at page 1203 that this is how the court tackles this project. First, the court may, I'm quoting, the court may conduct an hour-by-hour analysis of the fee request and exclude those hours for which it would be unreasonable to compensate the prevailing party. Or, second, when faced with a massive fee application, which I think this was, because it's a 41-volume record and a 94-page detailed timesheet, the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of excluding compensable hours from the fee application. And the district court did both. For example, he cut $250 hours for, quote, unsuccessful and excessive claims, I think, and then later did a 20 percent cut for that same reason using both of those things. And he never explains why 20 percent. Why not 10 percent? Why not 5 percent? Why that percentage? That's never explained. And so those are not, he didn't use the right standard in evaluating the fee request, and he double-counted in several places that we've addressed in the briefs, and that's why it's an abuse of discretion. Judge Morgia had a question. Well, I just wanted to get to the, really the bread and butter of this case, which it looks like you're right now doing, on setting the hourly rate at $350 for both the attorneys. What's your best argument? Yes, ma'am. Judge Morgia. I'm going to move on to the hours. Right. Hourly rate. So we presented seven declarations, including one of an expert, Reg Vitek, regarding the hourly rate of both attorneys. We also presented, you know, a two-year-old agreement with the city in a different case where the mayor and the city attorney had agreed that my hourly rate of $550 was reasonable and Mr. Bennett's $450. The city did not even oppose that request. The judge didn't ask for any briefing on it. There's a case right there, if you need it, to call Falheimer that says, those are reasonable hourly rates for attorneys of our experience. But we know from the, I think it's Northern case. So if we remand on the question of reasonable hourly rates, is there authority for remanding on this existing record, or would it be wide open again that the city would have an opportunity to now? Well, in the case, in hourly rates, Your Honor, there's not, when there's no evidence on the other side, it has to be based on evidence. And that was recently decided by this Court. But that's not really your question. That's not my question. I mean, my question is, would we remand on the existing record? Or, because I know, I mean, your argument on the hourly rates is that you put on all this evidence, the city didn't contest it, and the judge. Yes. So if we remand on that question, would we remand on the existing record, or would it be open again? On the existing record, Your Honor, because the evidence is only one way. And. Is there authority for that? Yes, the authority for that is in Carter, which is the third point I was going to get to, the recent case, Carter v. Caleb Brett. That case cited to United Steelworkers, a case that came out as a Ninth Circuit case, and says, the district court abused discretion. And there it says that the hourly rate has to be based on evidence. And here there's only evidence of one rate. That's not the question. I think you asked three times. The question is, if it goes back to the district court on that issue, should the defense now be allowed to submit evidence as to, you know, what the hourly rate should be? I don't believe so. Why not? You have a case that says they can't? I. The case is called Welch. This is called, it's Welch. It's at our opening brief. I'm sorry, reply brief at page 63. Welch said that, this court said, on remand the district court must presume those rates are reasonable. Welch is 480 Fed Third and we were at, the pinpoint was 945. Thank you. All right. Let's go to the hours. And your main argument, I just want to understand, is that there were, the court disallowed a number of hours and also cut 20%. Yes, Your Honor. All right. And what was the problem with that? Well, first it's double counting. That's one. But then if you go into the specifics, we have eight instances where the district court, what he says is contradicted by the record. For example, he cuts as excessive a brief that he identified by a docket number that I was ordered to file. The next five docket entries that are mentioned, there's nine in there, are bench briefs that we submitted during the trial that we were successful on, on establishing points. And our practice was to submit a bench brief so the opposing party and the court would have the authorities, the citations, as opposed to just making an oral record. So those couldn't be, by definition, unnecessary or excessive because they were successful. For example, we got a jury instruction. That was one of the bench briefs he said was excessive. We also filed a motion for a directed verdict on disparate impact. Ms. Terry is the only person that put on statistical evidence. But we filed a brief in support of that rather than making an oral motion, and he said that was excessive and unreasonable. So if you look at the details, Your Honor, of the specific hourly cuts, they're contradicted by the record as opposed to supported by the record. And, for example, another example is for clerical work, 250-hour cut. He takes one page randomly, and if you go through the three examples given, it's not clerical work. It's getting a call from the court and a telephone message from the court was one. At the very beginning of this case, the city was in default. So rather than overreact and run to court, I called opposing counsel and said, we need an answer unfiled. And that's not unreasonable, and it's not clerical. I wouldn't assign that to my secretary. You've been talking a little bit about disparate impact claim. I guess my question for you, is there precedent suggesting that success on a disparate impact claim confers some kind of meaningful public benefit even without injunctive relief? Well, logically it makes sense that it does, and I'm not aware of case law that says that specifically either way. However, if you think about it and where it's important, there's one of two things that's going to happen now. The city either is going to take that judgment and the finding, the specific finding of disparate impact, and change their policies, or they're not. And if they're not, that finding will have preclusive effect on any female who brings that issue to bear. Remember, the finding of it was based on a very extensive review of the seasonal, which are summertime lifeguards. It's the seasonal employee performance reviews. We looked at those over a ten-year period and were able to demonstrate that male lifeguards were getting higher ratings at a statistically significant advantage over females, and that EPR, if you will, was used in the promotional process. That was the practice at issue. And incidentally, Your Honor, we don't, the time spent on the request for the remedy of injunctive relief, which as Judge Smith wrote in Gonzales, the standard is, would it be reasonable to bill a private client for that? Ms. Terry sought injunctive relief as a remedy in the original complaint, her only one amended complaint. She testified about it at trial. She said in her declaration she wanted it, and she asked me to pursue it. Now, if she were a fee-paying private client, it would be impossible for her not to compensate me for that effort that took less than 30 hours to seek an injunctive remedy. And we also believe that it was error not to grant it, but Ms. Terry didn't appeal, and neither did the city, because she frankly was very happy with the result here. To her, because she, we have evidence, she's making about $3,500 a summer, and the maximum offer by the city ever was zero in four settlement conferences. This was a very good result for this particular client, but the overriding public policy, in our opening brief at pages 24 to 26, we recount the law, the Supreme Court, Rivera, talking about the importance. The Congress and the state legislature in California set up this mechanism of private attorney generals to advance this overriding public importance of making sure discrimination is ended. And that's why we think it's a public interest here, particularly under the spirit of that case, and I'll reserve my remaining time. I want to ask you one question. Yes, sir. I don't find any evidence in here this is an unusual circumstance that requires a remand to a different judge. I think it would be a waste of judicial resources to remand to another judge. I guess I'm trying to figure out why you're really going there. Well, we did feel like it was unusual circumstances, Your Honor, and I also ---- Why is it unusual? Unusual. We thought ---- Just because he doesn't follow a decision that came out later than he put it together? No. We felt like there was ---- it's an appearance of fairness standard, essentially, and we thought there were six or so reasons that would justify reassignment. And remember, it's not going to bear on ---- I think a different judge could decide this easily, but one, he had previously worked for the city is one, and you remember that was that my client called and asked about that, and that was deemed to be gossip. And I don't see how it's possible when a client asks you a question to ---- but he also had granted summary judgment, and then we won a trial with a unanimous jury. He considered the letter brief we thought was significant because the letter brief made its way into the fee order on this footnote that we found out six months later claiming that I miscited cases. The judge never said that I miscited anything. There are thousands of authorities that we cited below in different briefs, and we stand by our briefs. I'm human. Can I make a mistake? Yes. But that we thought was unusual that he ordered a brief to be filed ex parte. Thank you. And it was highly defamatory. And there's others. We have it in our reply brief. Thank you, Your Honor. That's in your brief. That's good. Have a look at those. All right, Counselor. Still the morning, so good morning. Kristen Zlotnick here for the City of San Diego, the City Attorney's Office. Just to respond to the points that were made by the plaintiff, first with respect to the arguments that were made with the principle of the litigation not being in the public interest, I think that that misstates what the order actually said and what the district court was saying by his comments. I think what the focus was with respect to the public interest comment was with respect to the results of the litigation, meaning that the result, the money that was recovered and who got that money. It was just the plaintiff. There was never a request for, like, a class action or anything like that. The injunctive relief was denied. I think that's where he was going is that the --. And let me just ask you, doesn't the fact that Ms. Terry prevailed on a disparate impact claim and not just a disparate treatment claim necessarily mean that her suit conferred meaningful public benefit? I mean, was it there? Well, not necessarily. I think that there's nothing in the record that reflects anything about there being an actual, you know, like, for example, this question, not this specific question necessarily, was addressed in both the Flannery and the Weeks case, where in both cases the courts noted that just because there was a finding of discrimination and while, you know, that finding exists and is not good, it doesn't necessarily provide, you know, a widespread public interest. And I guess the difference would be, like, something that would affect thousands of people, like some of the pension litigation that counsel cited in the briefs, that would be different. Have the city's policies changed regarding practices among promoting lifeguards in the wake of this litigation? I'm not aware of any change, and there certainly isn't anything in the record that reflects any change. And I would note that if the plaintiffs, if the appellants are going to make that one of their arguments, the appellant has the or the fee seeker has the burden of showing that as something that exists, this widespread public interest. Secondarily, with respect to the double counting as it has been put, I would disagree that there was double counting. I think what the district court was doing was following the methodology, which is to first establish the lodestar amount, which you do by you're looking for what is the reasonable time that is spent on things that are not excessive, not unnecessary, not duplicative. With respect to that, the. Reaching that amount, the lodestar amount, district court did deduct a percentage for unsuccessful work, right? I think that that was, let's see. We had a section in our original opposition papers where we pointed out to the court and we line itemed it out, 517 hours, roughly .1 hours of time that were, that we felt was time unreasonably spent on things that would be unsuccessful and not, that would not contribute to the success, the ultimate success of the litigation. And while the district court did not adopt all 517 hours, I think that that is where the 250 deduction came from as stuff, as time that he felt was time not reasonably expended towards the success of the litigation. So, you know, that was, he was. You're not really addressing the question. Okay. The district court cut the number of hours by 250 to reflect unsuccessful claims. Then the district court adjusted the lodestar downward for limited success in the litigation. That's the double counting they're referring to. Yes, and how I would distinguish that is that the, where the time deduction is not necessarily a time deduction for unsuccessful claims. That's what he said. Well, it says, it says for, if you look at, it's for things that, unsuccessful, like claims, motions, and requests. So, like, time spent on activities that were, that did not, were not reasonably expended towards the successful claims in the litigation. It's a, whereas the 20%, which was later like an overall negative multiplier that was used, that was done based on the monetary results of the litigation. So, the comparing the damages sought versus damages acquired, you know, she on the low end was asking for $500,000 worth of economic damages. You know, on the low end, she ended up getting $100,000 overall, 20%. Why don't we go to reasonable rate? Sure. Okay. Here, the court rejected all of Terry's evidence on reasonable fees, said it's all. Okay. Said he didn't present any evidence. How can that not be an abuse of discretion? Well, I think that the court is allowed to, if they, if the court wants. The court may not solely rely on its own knowledge and experience to set a reasonable fee. That's the standard. Well, I don't think that he did do that. Well. What did he do it on? Because that's all he was left with, I think. Well, I think he built on what was presented. Like, for example, in the Gonzales case, the court found that it was not an abuse of discretion to not adopt the expert declarations that were presented. Also, in the same, in the Gonzales case, the court found that it was not an abuse of discretion to not go with the rates that were used between the part, in the previous case. But you had to find something, even in Gonzales, upon which to base it, and it couldn't be your own idea of a good time. Well, he, what he was saying is that he was, he was, he was presented with declarations from various attorneys and the plaintiff's attorneys themselves, and he was presented with other evidence that was presented, you know, such as the other cases and whatnot. But even in the, and what is the name of that case? Point to one thing that the district court relied on that wasn't based on his own knowledge or experience. Well. As far as the hourly rate is concerned. Yeah. That's what I'm talking about. That's what we're talking about, right? Well, I think that he was, he didn't, he started with the 450 that he, that was presented as what the rate was that they wanted, and he reduced it down based on his familiarity with the legal community and work done by similar lawyers. But isn't that contrary to Gonzales? I don't know if it's contrary to Gonzales. I think that Gonzales, what the issue was there was that it was a, it was a, you know, a percentage reduction that was, that appeared arbitrary because it was just a percentage reduction. He just, you know. Let me ask you, if we are to remand this, then would the city, should the city be permitted to challenge the proposed hourly rates on remand when it didn't do so previously? I think that, I don't think there's any, I would not necessarily agree that Welch says what the plaintiffs say it does. I don't think that there's any case law. Certainly Gonzales does not mention that it would be, that we would have to go with what. So you don't know whether you would? I'm not certain, but I don't know of anything that would preclude us from saying anything. But you agreed to challenge it below? We did not. Okay. And so if it were to go back, you don't know whether you would challenge it again? I don't know. And you don't have any authority? I know you questioned the authority that your colleague made in saying we are allowed to do it. Is there any authority that says we shouldn't limit that? I don't know of any. Okay. Thank you. Okay. The last question I have, which is, to me, the heart of the issue, in applying the lodestar methodology in Gonzales, we said you do one of two things. Either go in and make an hour-by-hour analysis, and then you can do what you've got to do. Or when faced with a massive application, you can make an across-the-board percentage cut, either in the number of hours claims or the final lodestar figure. And we said, you know, there's a hair shaving thing you can do without any explanation, but you've got to explain it if you're going to go above 10%. What did the judge do here? Which one of those two alternative methods did he use? Did he use the hour-by-hour analysis? And if he did, cite the record where I can see it, because I couldn't find it. Did he use the across-the-board percentage cut? Because if he did that, I want you to cite where it is and why he did that. Because I didn't find it. I mean, I hear all your arguments, but I look right at what he did, and I can't find it. I would say, and I would say that he did a little of both. A little of both? Yeah, and the reason that I say that. Did he do that? Well, you know, it. Annie, be fair. No, I don't think there's anything that he. If you say he can, you might lose a lot of credibility on your other arguments here. Well, hear me out. The reason that I say he did a little of both is because it was a massive record, and so in some ways he did do more of a, you know, more of a percentage sweep, you know. More of an off-the-cuff shot. Reduction. I mean, my worry is that I sat where he sat before, and I know what he faced. A record that is voluminous, and not only that, but the attorney fee request is voluminous, and sit down and try to take that apart hour by hour is a mess. On the other hand, you can do it by percentage, but you've got to explain it, and you've got to tell me why it's that percentage and not something else. That's also tough. So you have a tendency, which I worry this good judge did, to just kind of, well, I'll see if I can't just kind of throw it all together here and make it work. The benefit that this district judge had is that our office spent a ton of time line-iteming. We went through and made those charts for him. If he had just gone by what you said, it would have been easy. We would have said he adopted, and there it is. But he didn't. He cut your stuff, and then he went off on his own, and then he came back to cut your stuff again, and then he went off on his own, and that doesn't follow the analysis. That's my worry. Well, we would say that he went with what we provided him. So if we provided him, you know, like, for example, 500 hours approximately of time that we felt fit within a particular category of unreasonably billed time, he looked through that and didn't agree with all of what we found, and so he reduced it by 250 instead. So he picked a number, but he didn't even tell me why he picked that number. That he's got to do. Hasn't he? Don't answer my question, because you're losing credibility. Well, I think that he doesn't necessarily, like, he has to provide his reasoning for why he provided, why he ordered the way he ordered. And I would just point to, for example, the case that was recently decided this past December, Mooney's v. United Parcel Service, and in that case, this Court did uphold the fee order as being adequately explained. Okay. One last question. It appears under California law, a district court can penalize an attorney for an inflated fee request by denying all fees. But I'm just not sure that's true under Federal law. Is that true under Federal law? Are we talking about the fees for fees? The time spent litigating fees. Yeah. She is talking the fees for fees. Fees for fees. I don't know of there being a difference. I mean, I believe that even the Federal law points to the same rationale for denying fees. Well, that's what I'm looking for. What authority? Gosh, that is, I want to say that that is Serrano that talks about that, and then the Serrano case quotes a Federal court case, the Seventh Circuit case, I want to say that says, you know, that submitting, just the act of submitting an unreasonable fee request, even submitting that for the court, that that in itself is a special circumstance that can warrant fees being denied. Is Serrano a Federal case? Well, Serrano's not, but what the, and I'm not entirely, and I'm looking for it right now. That's fine. Thank you. But I believe that Serrano is citing to a Federal case. Let me just read you this very short passage from Gonzalez, all right? Okay. This is at, right near the end. It's a quote from another Ninth Circuit case. It is now well established that time spent in preparing a fee application is compensable. This is so even when the district court does not award the applicant the full amount of fees he requests. What do you do with that? Well, it is time, it is compensable time. However, there are, I mean, that's their, all time spent is compensable. That means that it can be compensated. It's not. Can be or must be? Can be. Can be. I don't think there is any rule that says that the district court must, no matter how inflated the fee request and no matter what the circumstances may be, I don't think a district court must, just must award fees for submitting fees. I do not believe that that is the rule. Okay. I thank you, and I thank you. I think we've heard both arguments. We know what you're saying. We've kind of tested you both ways and gave you a little extra because we tested you. We gave her a little extra, and we appreciate your arguments, but I think we'll just submit the case now. So this case, Terry v. San Diego, 12-56779 is now submitted, and we thank you all for your good arguments. Thank you very much. Thank you.
judges: Tashima, Smith, Murguia